IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Alan H. Markwell,

    Plaintiff,

  v.                    Case No. 2:14-cv-47

Joe Murphy,

    Defendant.

ORDER

    Plaintiff Alan H. Markwell, a state prisoner incarcerated at the Belmont Correctional Institution ("the Institution"), filed this action against defendant Joe Murphy, the Quality Improvement Coordinator ("QIC") at the Institution. Plaintiff's complaint includes exhibits, incorporated by reference, consisting of grievance forms and other documents from the prison internal dispute resolution process.

    Plaintiff has asserted an Eighth Amendment claim, alleging that Murphy was deliberately indifferent to his serious medical needs. In an Informal Complaint Resolution dated July 11, 2013, plaintiff complained that Nurse Eller did not promptly respond to his request for replacements for his old knee braces, which had fallen apart due to dry rot. Nurse Eller responded to the informal complaint on July 12, 2013, stating that plaintiff's reports that his braces were falling apart were being evaluated. See PAGEID 54. Plaintiff alleged that the braces were replaced with neoprene sleeves which were not the correct size. Complaint, PAGEID 45. Plaintiff further alleged that on August 22, 2013, Murphy came to talk to him concerning his complaints about the braces. He contended that Murphy gave him improper medical advice concerning

the use of the braces and demanded that plaintiff wear them. Complaint, PAGEID 44, 48. Plaintiff later stated in an Informal Complaint Resolution dated August 23, 2013, that the new sleeves were causing discomfort and pain, leaving red marks, injuries to the skin, rashes, inflamation and irritation. In response to this informal complaint, Mary Potter, DWSS, a prison staff member, wrote that on August 29, 2013, plaintiff was provided with medically sufficient neoprene braces in a larger size, and that the metal hinged braces requested by plaintiff were "not recommended by [the] ALP."[1] See PAGEID 48.

Plaintiff further alleged in his complaint that Murphy retaliated against him in violation of the First Amendment for filing an informal complaint concerning his knee braces. Plaintiff contended that on August 22, 2013, Murphy questioned why plaintiff was not wearing his knee braces and became aggressive. Plaintiff alleged that during the confrontation, he was placed in handcuffs and taken to segregation for two-and-a-half hours, and that Murphy thereafter issued a false misconduct ticket based on plaintiff's disrespectful conduct. Complaint, PAGEID 46, 48. In his Informal Complaint Resolution filed on August 23, 2013, plaintiff alleged that Murphy's insistence that he wear the neoprene sleeves "suggested" a claim for retaliation. See PAGEID 48. Plaintiff also contended that the fact that the misconduct ticket did not specify the order which plaintiff was accused of violating, was

---

[1] An ALP, or Advanced Level Provider, is a medical professional who is approved to practice as a physician, an advanced practice nurse, or a physician's assistant. See Ohio Department of Rehabilitation and Correction, Policies and Procedures, No. 68-MED-01.

signed by another staff member, not by Murphy, and was reversed on appeal also demonstrated a retaliatory motive.  Complaint, PAGEID 46.  In a Disposition of Grievance dated October 8, 2013, Kelly S. Riehle, the reviewing official, stated that the misconduct ticket was reversed due to a procedural error, specifically, the signing of the ticket by Block Officer Sproull rather than Murphy, who did not have his electronic signature on file as needed for writing the electronic report.  Plaintiff's grievance concerning Murphy's conduct was otherwise denied for insufficient evidence.  Riehle stated that the procedural error did not indicate that the ticket was false, and that Murphy's act of checking on plaintiff as part of his job duties as QIC was not a violation of rules or policy.  See PAGEID 50.

This matter is now before the court for consideration of the January 14, 2015, report and recommendation of the magistrate judge, recommending that Murphy's October 31, 2014, motion for judgment on the pleadings be granted.  Plaintiff filed objections to the report and recommendation on April 22, 2015, and Murphy filed a response to plaintiff's objections on April 27, 2015.[2]

I. Standards of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. §636(b)(1);

---

[2] Murphy argues for the first time in his response that plaintiff's claims should be dismissed for failure to exhaust administrative remedies.  The magistrate judge never had the opportunity to consider this issue, and defendant may not raise this new argument at the district court stage of review.  Murr v. United States, 200 F.3d 895, 902 n. 1 (6th Cir. 2000).

3

see also Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

Courts apply the same analysis to motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) as they apply to motions to dismiss under Fed. R. Civ. P. 12(b)(6). See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n, 623 F.3d 281, 284 (6th Cir. 2010). To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff's argument that genuine issues of fact exist is inapposite, as "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless

4

clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 582 (6th Cir. 2007)(internal citation and quotation marks omitted).

II. Eighth Amendment Claim

This court agrees with the magistrate judge's factual and legal analysis of plaintiff's Eighth Amendment claim. The complaint lacks any factual allegations indicating that Murphy had any authority or control over the decision to provide plaintiff with any particular type of knee braces. In fact, plaintiff alleged that Murphy was unqualified to provide any medical services. Even assuming that Murphy had some input as to what type of braces plaintiff received, the complaint fails to allege an Eighth Amendment violation. To establish an Eighth Amendment violation based on the failure to provide medical care, a prisoner must show that he has a serious medical condition and that the defendant displayed a deliberate indifference to his health. Farmer v. Brennan, 511 U.S. 825, 839 (1994); Wilson v. Seiter, 501 U.S. 294, 298 (1991). A complaint that a prison doctor or official has been negligent with respect to medical diagnosis or treatment does not state a valid claim under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994). Rather, to plead an Eighth Amendment violation, plaintiff was required to allege facts sufficient to show that the treatment was "so woefully inadequate as to amount to no treatment at all[.]" Westlake v. Lucas, 537 F.2d 857, 860-61 n. 5 (6th Cir. 1976). The factual allegations in the complaint fail to satisfy this standard.

The August 23, 2013, Informal Complaint Resolution indicates

5

that within a week of Murphy's interaction with plaintiff and plaintiff's complaints that the large-size neoprene sleeves were too small, plaintiff was provided with extra-large sleeves. Plaintiff does not allege that these sleeves also caused pain or irritation.  The fact that plaintiff wanted a different type of knee brace which was not recommended by the prison's medical provider does not suffice to support an Eighth Amendment claim. See Mitchell v. Hininger, 553 F.App'x 602, 605 (6th Cir. 2014). As the magistrate judge concluded, there are no allegations that support a finding that the neoprene sleeves were so inadequate as to amount to a deliberate indifference to plaintiff's serious medical needs.  See Doc. 12, p. 7.

III. First Amendment Claim

This court also agrees with the magistrate judge's analysis of plaintiff's First Amendment claim.  To state a First Amendment claim for retaliation, plaintiff must allege that: (1) he engaged in protected conduct; (2) an adverse action was taken against him, and (3) there is a causal connection between the first and second elements, i.e., that the adverse action was motivated at least in part by the protected conduct.  LaFountain v. Harry, 716 F.3d 944, 948 (6th Cir. 2013).

The magistrate judge correctly concluded, Doc. 12, p. 9, that the complaint failed to allege facts sufficient to establish a causal connection between plaintiff's protected conduct of filing complaints concerning his knee braces, and the alleged adverse actions of being placed in segregation and the issuance of an

6

allegedly false misconduct report.[3]  Murphy was not named in the Informal Complaint Resolution concerning plaintiff's knee braces which was submitted to Nurse Eller on July 11, 2013.  No facts are alleged as to why Murphy would have been affected or upset by this complaint, or why he would have been motivated to dissuade plaintiff from filing further complaints.  In fact, a part of Murphy's job as QIC was to "identify problems and opportunities for improvement in patient care services."  PAGEID 50.  Plaintiff's next Informal Complaint Resolution concerning the knee braces was dated August 23, 2013, after plaintiff's alleged confrontation with Murphy on August 22, 2013.  The later filing of this informal complaint could not show a retaliatory motive for Murphy's alleged actions on an earlier date.

According to the complaint, Murphy allegedly approached plaintiff to talk with him concerning his complaints about the neoprene sleeves, noted that plaintiff was not wearing those sleeves, and attempted to instruct plaintiff concerning the use of those sleeves.  The fact that Murphy allegedly encouraged plaintiff to wear the sleeves does not show a retaliatory motive.  Likewise, the allegations that Murphy caused plaintiff to be placed in segregation and issued a misconduct ticket against plaintiff (which was later reversed solely due to the lack of the proper electronic signature) are not sufficient to demonstrate a causal connection

---

[3] To the extent that plaintiff's complaint may be construed as asserting a due process claim concerning these actions, it fails to state a claim for relief.  A prisoner has no constitutional right to be free from false accusations of misconduct.  Jackson v. Hamlin, 61 F.App'x 131, 132 (6th Cir. 2003).  Likewise, plaintiff's placement in segregation for a few hours did not infringe on a due process liberty interest.  See Sandin v. Conner, 515 U.S. 472, 486 (1995).

7

between plaintiff's filing of an informal complaint concerning his braces and Murphy's conduct.  The complaint fails to state a claim for retaliation under the First Amendment.

IV. Conclusion

    Having reviewed the report and recommendation and plaintiff's objections in accordance with 28 U.S.C. § 636(b)(1) and Rule 72(b), the court finds that plaintiff's objections are without merit.  The court overrules plaintiff's objections (Doc. 21), and adopts the magistrate judge's report and recommendation (Doc. 12). Defendant's motion for judgment on the pleadings (Doc. 8) is granted.  The clerk is directed to enter judgment in favor of the defendant.

Date: May 8, 2015                                                 s/James L. Graham

                                       James L. Graham
                                       United States District Judge